Reese, J.
delivered the opinion of the court.
The complainant and one Hightower being separately indebted to Jones, gave a joint deed of trust to one Jarnagin, as trustee, to secure said debts, conveying to said trustee two negro slaves, separately owned by each, that is, one of the slaves by each of the vendors.
It is alleged in the bill that Jones agreed with complainant, when the trustee was taking steps to sell the slaves, that Jones would receive into his possession the slave of complainant as a pledge for his separate debt, and look to High-tower for his debt; and that, in pursuance of said agreement, on the morning when the sale was to take place, he did deliver, and the said Jones did receive said slave as a pledge, and that afterwards, in bad faith, on the same day, he caused the trustee to sell the slaves and he became the purchaser of both of them, in the absence and without the knowledge of the complainant. The defendant admits that the agreement alleged was made, but that it was voluntary and not binding on him, and founded on the expectation that defendant would pay the money before the day of sale. The answer states, that, on the day óf sale, defendant did deliver *534 the slaves to him, and that defendant said at that time to the complainant and Hightower, that if he became the purchaser, and they would pay the debts in two or three weeks, he would return the slaves. The trustee proves that when complainant delivered the negro, on the morning of the sale, to defendant, he said, here is the- slave, and he is yours till I pay you my debt; and defendant was silent, and complainant left the place and went home, and, the- trustee believes, did not expect a sale would take place; but defendant urged the sale, and the trustee reluctantly sold the slave.
The proof of the trustee and the admission of the answer make it plain, we think, that the sale ought not to stand; for, if the complainant had known that the sale would come off, and the' defendant would purchase absolutely for his own benefit, he might have procured other bidders, or made other arrangements.
The relation in which the mortgagee or creditor in a deed of trust stands to the vendor or debtor, imposes upon him the observance of fairness and good faith; and if he make an improper use of the power which he has over the trustee and over the sale, and become the purchaser, he will be held, in equity, as entitled to retain the property only as a security for his debt. The general ground on which his honor, the Chancellor, placed his decree, namely, that the morgagee or creditor in a deed of trust will not be allowed to purchase at all at the trust- sale, cannot be maintained. In general, his power over the sale-is not greater than that of an execution creditor over a sale at law, whose right to purchase has never been questioned. The wrongful and injurious exercise of this power, in either case, against fairness and good faith, will deprive the party, in equity, if a purchaser, of an advantage fraudulently obtained.
The general principle recognized in the case of Wade vs. Harper, 3 Yer. 384, is applicable to sales and purchases by trustees, and the authority relied on is that of Armstrong’s heirs vs. Campbell, and that class of cases. The case, under all its circumstances, may have been prqperly decided; but it confounds or misstates the relation of parties, and seems not to have been well considered. What is said on the same *535 subject in Chester vs. Greer, 5 Hump., relates to the misconduct and wrongful and injurious acts of thé’ creditor in the deed of trust..
The mortgagee or creditor in a deed of trust may purchase at a trust sale if he acts with fairness in the transaction, and his title will be good. In so holding, we overrule no decision made upon a state of facts involving such a question; we merely dissent from the correctness of what seem to be dicta in the cases referred to.